UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                 Criminal Case No. 13-20298

Scott R. Detloff,                     Honorable Sean F. Cox

    Defendant.
_____/

**OPINION & ORDER DENYING
DEFENDANT'S MOTION TO SUPPRESS (DOCKET ENTRY NO. 27)**

In this case, Defendant Scott R. Detloff ("Detloff" or "Defendant") is charged with financial crimes. The matter is currently before the Court on Detloff's motion asking this Court to suppress evidence that was seized during a warrantless search of a vehicle. (Docket Entry No. 27). The parties have briefed the issues and the Court held evidentiary hearings as to this motion on September 11, 2013, and September 27, 2013. For the reasons set forth below, the Court shall DENY the motion.

**BACKGROUND**

In this action, Defendant Detloff is charged with: 1) Use of Counterfeit Access Device, in violation of 18 U.S.C. § 1029(a)(1) (Count One); 2) Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A (Count Two); 3) Bank Fraud, in violation of 18 U.S.C. § 1344 (Count Three); 4) Theft of United States Mail, in violation of 18 U.S.C. §1708 (Count Four); and 5) securities violations under 18 U.S.C. § 513(a) (Count Five). The Indictment also contains criminal forfeiture allegations.

1

On June 19, 2013, Defendant filed a motion seeking discovery from the Government (Docket Entry No. 28).

On June 19, 2013, Defendant filed the instant Motion to Suppress (Docket Entry No. 27), challenging a warrantless search of his vehicle. In that motion, Defendant stated that "[i]t may be the position of the government that the search of the vehicle was an 'inventory search'" and that Defendant "is presently awaiting a copy of Novi's standard inventory policy, if one exists." (*Id*. at 3).

As of August 30, 2013, the Government had not responded to Defendant's Motion for Discovery. This Court then ordered the Government to file a response no later than September 4, 2013. (Docket Entry No. 37). On September 4, 2013, the Government filed a response to Defendant's Motion for Discovery wherein it: 1) asserted that Defense Counsel had not sought concurrence before filing the motion; and 2) did not address the merits of the motion.

The following background facts relating to the Motion to Suppress are undisputed. On October 11, 2009, Detloff was driving a vehicle in the City of Novi, Michigan. An Officer pulled the vehicle over after learning that it had been reported as stolen. After exiting the vehicle, Detloff fled on foot. Detloff was ultimately apprehended and was arrested.

The van that Detloff had been driving was impounded and ultimately searched by officers who seized mail, checks, and other items from the interior of the vehicle. In his Motion to Suppress, Detloff challenges the warrantless search of the vehicle.

In response to the motion, the Government asserted that evidence was seized from the vehicle under the "plain view exception" to the warrant requirement. (Docket Entry No. 33 at 6). The Government's brief did not assert that the seizure was pursuant to a valid inventory search,

nor did it address whether or not the City of Novi had a written inventory policy during the relevant time period.

This Court scheduled this motion for an evidentiary hearing on September 11, 2013. Before the hearing began, Counsel for the Government stated that the Government contends that the evidence was seized pursuant to a valid inventory search. Counsel for the Government also stated that he had been advised that there was no written inventory policy for the Novi Police Department.

At the September 11, 2013 hearing, the Government called Sergeant Ayren Edgar to testify as a witness. During that hearing, Sergeant Edgar testified during cross-examination that the Novi Police Department may well have a written policy concerning inventories of vehicles. (9/11/13 Hrg. Tr.).

The evidentiary hearing was adjourned until September 27, 2013, so that the Government could produce "the Novi Police Department's written policy or policies, applicable in October of 2009, regarding inventory searches, towing, and/or impounding vehicles" and so that an additional witness could be called. (Docket Entry No. 39).

The Court also permitted the parties to file supplemental briefs prior to the September 27, 2013 hearing. Both parties did so.

In its September 18, 2013 brief, the Government argued that the evidence was seized from the vehicle pursuant to the inventory exception to the warrant requirement. (Docket Entry No. 40).

At the September 27, 2013 hearing, the Government called Officer Eric Lindblade to testify as a witness. Defense Counsel cross-examined Officer Lindblade and called Detloff to

testify for the limited purpose of the Motion to Suppress. One exhibit (marked Government's Exhibit Number 1) was admitted at the hearing – a document titled "Abandoned And Impounded Vehicles," marked Directive 438. (Govt.'s Ex. 1 at 1).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having observed the evidence and the witnesses who testified at the evidentiary hearings, allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Sergeant Ayren Edgar ("Edgar") has been employed as a police officer by the City of Novi Police Department for eleven years. On October 11, 2009, Edgar was not a sergeant. Rather, at that time, he was a road patrol officer.

While on duty on October 11, 2009, at approximately 7:00 p.m., Officer Edgar observed Detloff driving a van with an Ohio license plate in the City of Novi, in an area that was an industrial park. He was in a fully-marked police car. Officer Edgar thought the van seemed out of place in the industrial area at that time of night and decided to run the van's license plate in the L.I.E.N. system. He continued to follow the van. The van quickly ducked behind a building, attempting to avoid the police car. Officer Edgar, however, relocated the vehicle.

The L.I.E.N. system showed that the van had been reported as stolen. Officer Edgar received confirmation from dispatch that the vehicle had been reported as stolen and he requested assistance from other officers as he continued to follow the van.

Officer Edgar eventually activated the overhead lights on his police car to pull the van

over. The van pulled into the parking lot of a strip mall. Detloff, the driver of the van, stepped out of the van with his hands up in the air and his keys in his hand. By this time, additional officers had arrived at the scene to assist, including Novi Police Department Officer Eric Lindblade.

Officer Edgar ordered Detloff to throw the keys down. Detloff followed that order and threw the keys on the ground. As Officer Edgar began instructing Detloff to turn around so that he could arrest him, Detloff turned around and fled on foot. Detloff ran into a nearby marshy field.

Detloff alluded the officers, by hiding in the field, for about an hour and half. Eventually, however, Detloff came out of the marsh and, after a brief struggle, was apprehended. Detloff was handcuffed and arrested.

After Detloff was arrested and taken from the scene, Officer Lindblade opened the van door to check the van's vehicle identification number ("VIN") on the side of the door. Officer Lindblade relayed the VIN number to dispatch, who confirmed the van was stolen.

Officer Lindblade then looked inside the interior of the van and saw a wallet sitting on either the front seat or the console. At this point, the officers still did not know the identity of the driver of the van. Officer Lindblade took possession of the wallet, which contained several different drivers licenses.

Officer Lindblade then had dispatch call for a tow truck. The van was towed by a private company called Hadley's Towing. Hadley's towed the van to the Novi Police Department on October 11, 2009, so that an inventory search could be conducted. Officer Lindblade, however, did not participate in the inventory search.

At this time, the City of Novi had a written policy regarding impoundment of vehicles that provided that an officer may impound a vehicle from public or private property in several circumstances, including "[i]f there is reasonable cause to believe that the vehicle or part of the vehicle is stolen." (Govt.'s Ex. 1 at 6). It also had a written inventory policy that provided as follows:

### IV.  INVENTORY OF IMPOUNDED VEHICLES

A. In order to safeguard the owner's property and protect the Department from false claims of theft or lost property, all vehicles impounded according to the Department's vehicle impound directive shall be subject to a complete and thorough inventory.
B. The inventory should include the vehicle's interior such as front and rear seats, glove compartments, storage areas, sun visor's, trunk and engine compartments.
C. The exterior of the vehicle shall be visually inspected for damage by the officer conducting the inventory. Recent damage shall be noted on the impound sheet. In accident cases where the registered owner is not present the UD-10 will suffice.
D. Officers may open closed containers with the vehicle whose contents cannot be determined from the containers. This is to be done for inventory purposes only.
E. Items of great value such as camera, cellular phones, wallets, portable radios, jewels, etc. should be removed and secured by the office. The results of such inventory will be thoroughly documented in the officer's incident report.
F. If any contraband or evidence is found during a vehicle inventory, it shall be properly processed as per Department Directive 465 – Property and Evidence Handling.

(Govt.'s Ex. 1 at 8).

Officer Edgar conducted a search of the van on October 11, 2009, after it had been towed to the Novi Police Department. Sergeant Fanning assisted him.

Officer Edgar testified that while he was not comfortable quoting any specific language

regarding it, he believed that the City of Novi has a written policy concerning inventory searches. He testified that the purpose of an inventory search is to document any items of value or evidence.

Officer Edgar testified that the policy gives officers some discretion as to what to look for and how to catalog items. He testified that while other officers may do things differently, when he conducts an inventory search, he writes down what he has found and indicates that in his written report. Officer Edgar testified that he prepared such a report when he conducted the inventory search of the van on October 11, 2009.[1] During that search, Officer Edgar cataloged in his written report various items of mail, several driver's licenses, a camera, and various documents.

Some of the documents in the van were sealed envelopes. As such, Officer Edgar could not tell what was in the envelopes until he opened them.

## ANALYSIS AND CONCLUSIONS OF LAW

Officer Edgar stopped the van that Detloff was driving after learning that the van had been reported as stolen. Officer Edgar had probable cause to stop the van. Indeed, Detloff does not challenge the initial stop of the van.

In considering the subsequent search of the van, this Court "must begin 'with the basic rule that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" *United States v. Hockenberry*, 730 F.3d

---

[1] Neither party to sought to admit Officer Edgar's written report into evidence during the evidentiary hearings.

645, 658 (6th Cir. 2013) (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)).

One of those exceptions is the automobile exception to the warrant requirement. Pursuant to the automobile exception to the warrant requirement, an officer may search a mobile vehicle without a warrant if he has probable cause to believe that the vehicle contains evidence of a crime." *Smith v. Hockenberry*, 136 F.3d 1070, 1074 (6th Cir. 1998) (citing *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994)). A warrantless search of a vehicle does not violate the Fourth Amendment as long as the officers have probable cause to believe that the vehicle contains evidence. *Wright*, 16 F.3d at 1437. Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion. *Id.* Probable cause exists where there is a "fair probability" that evidence of a crime will be found. *Id*. This is a "commonsense, practical question" that is to be judged from the "totality-of-the-circumstances." *Id.*

Here, based upon the facts known to him at the time, there was probable cause for the initial warrantless search of the van by Officer Lindblade. Prior to Officer Edgar pulling the van over, he ran the van's license plate and dispatch advised that the van had been reported as stolen. After the van was pulled over, Detloff fled when Officer Edgar attempted to arrest him. After Detloff reappeared from the marsh, he struggled with the officers, including Officer Lindblade, before he was ultimately arrested. Officer Lindblade was aware of all of this. Under these circumstances, Officer Lindblade had probable cause to believe that the van may have been a stolen vehicle and that it would contain evidence of a crime.

The Government contends that the subsequent search of the van, after it was impounded, is a valid inventory search.

Inventory searches are another exception to the warrant requirement of the Fourth Amendment. *Hockenberry,* 730 F.3d at 658. "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren v. United States*, 517 U.S. 806, 811 n.1 (1996).

"The government has the burden of showing that the inventory search was conducted pursuant to standardized criteria." *United States v. Richards*, 56 Fed. App'x. 667, 670 (6th Cir. 2003).

A warrantless inventory search may only be conducted if police have lawfully taken custody of a vehicle. *Hockenberry*, 730 F.3d at 658.

Again, Officer Edgar had probable cause to stop the van that Detloff was driving. The officers' decision to impound the vehicle was also reasonable under the circumstances presented here. An information check revealed that the van had been reported as stolen. After Officer Edgar pulled the van over, Detloff fled the scene. Detloff was later apprehended and arrested. Officer Lindblade acted in accordance with the Novi Police Department's written policy, which instructs officers to impound a vehicle "[i]f there is reasonable cause to believe that the vehicle or part of the vehicle is stolen." (Govt.'s Ex. 1 at 6). Thus, the officers "had probable cause to stop the vehicle and made a reasonable decision to impound the vehicle. Accordingly, it was proper to conduct an inventory search following this series of events." *Hockenberry,* 730 F.3d at 660.

"With regard to the actual performance of an inventory search," the Sixth Circuit has recently summarized:

9

> "In order to be deemed valid, an inventory search may not be undertaken for purposes of investigation, and it must conducted according to standard police procedures." [*Smith*, 510 F.3d] at 651 (citation and internal quotation marks omitted). A general written inventory policy does not grant officers carte blanche when conducting a search; rather, it must be sufficiently tailored to only produce an inventory. [*United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007)]. Thus, "[i]n conducting an inventory search, officers do not enjoy their accustomed discretion; they simply follow the applicable policy." *Id.* "Nonetheless, officers may exercise some judgment based on concerns related to the purposes of an inventory search; for example, they may decide to open particular containers if they cannot determine the contents." *Id.* (citation and internal quotation marks omitted). "When a legitimate search is underway, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." [*Bertine*, 479 U.S. at 375, 107 S.Ct. 738] (citation and internal quotation marks omitted).

*Hockenberry*, 730 F.3d at 659.

Officers are required to follow standardized criteria or an established routine to "assure that inventory searches are not a 'ruse for general rummaging in order to discover incriminating evidence." *Id*. (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)).

The Court must also "consider whether the evidence establishes that the 'police acted in bad faith or for the sole purpose of investigation' in conducting an inventory search." *Hockenberry*, 730 F.3d at 659 (quoting *United States v. Vite-Espinoza*, 342 F.3d 462, 470 (6th Cir. 2003)).

At the time of the search at issue in this case, the City of Novi had a written inventory policy that provided as follows:

IV. INVENTORY OF IMPOUNDED VEHICLES

A. In order to safeguard the owner's property and protect the Department

      from false claims of theft or lost property, all vehicles impounded according to the Department's vehicle impound directive shall be subject to a complete and thorough inventory.

- B. The inventory should include the vehicle's interior such as front and rear seats, glove compartments, storage areas, sun visor's trunk and engine compartments.
- C. The exterior of the vehicle shall be visually inspected for damage by the officer conducting the inventory. Recent damage shall be noted on the impound sheet. In accident cases where the registered owner is not present the UD-10 will suffice.
- D. Officers may open closed containers within the vehicle whose contents cannot be determined from the containers. This is to be done for inventory purposes only.
- E. Items of great value such as camera, cellular phones, wallets, portable radios, jewels, etc. should be removed and secured by the office. The results of such inventory will be thoroughly documented in the officer's incident report.
- F. If any contraband or evidence is found during a vehicle inventory, it shall be properly processed as per Department Directive 465 – Property and Evidence Handling.

(Govt.'s Ex. 1 at 8)

Like the officers in *Hockenberry*, Officer Edgar's testimony reflects "a less than ideal understanding" of the purposes of an inventory search. While he was able to identify some of the main goals of an inventory search, such as safekeeping of valuable items, he also stated that one of the purposes of an inventory search is to document evidence.

Nevertheless, his testimony establishes that he followed the main parameters[2] of the City of Novi's policy by searching the van and documenting the items found in the van on his written report.

---

    [2]The question is not whether the policy was "complied with to the T." *Hockenberry*, 730 F.3d at 661. This is because "[a]lthough officers must follow standardized procedure in conducting an inventory search, the law allows for some flexibility and practical judgment in how such searches are carried out." *Id*.

Moreover, that written policy directs officers to open closed containers in the vehicle when their contents cannot be determined without doing so. Thus, Officer Edgar's search of closed envelopes found inside the van was reasonable and in compliance with that policy. *United States v. Unakalu*, 455 Fed. App'x. 730, (9th Cir. 2011).

The Court also finds that Officer Edgar was not acting in bad faith or for sole purpose of investigation.

Accordingly, this Court concludes that Officer Edgar conducted a valid inventory search of the van and the Court shall deny Detloff's motion.[3]

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant Detloff's motion seeking to suppress evidence seized from the warrantless search of the vehicle is DENIED.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: December 30, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on

---

[3]The Court notes that Government also raised an alternative argument, that had not been raised in its initial response to the motion. Although the Government's alternative argument that Detloff lacks standing to challenge the search of the vehicle because he abandoned the vehicle may have merit, *see United States v. Harris,* 1995 WL 111465 (6th Cir. 1995)*,* the Court need not reach the issue given the above rulings.

December 30, 2013, by electronic and/or ordinary mail.

           S/Jennifer McCoy
           Case Manager