UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                              Criminal Case No. 13-20298

Scott R. Detloff,                      Honorable Sean F. Cox

    Defendant.
_____/

**OPINION & ORDER DENYING
DEFENDANT'S MOTION TO SUPPRESS (DOCKET ENTRY NO. 25)**

In this case, Defendant Scott R. Detloff ("Detloff" or "Defendant") is charged with financial crimes. The matter is currently before the Court on Detloff's motion asking this Court to suppress evidence that was seized during a warrantless search of his apartment. (Docket Entry No. 25). The parties have briefed the issues and the Court held an evidentiary hearing on December 17, 2013. For the reasons set forth below, the Court shall DENY the motion.

**BACKGROUND**

In this action, Defendant Detloff is charged with: 1) Use of Counterfeit Access Device, in violation of 18 U.S.C. § 1029(a)(1) (Count One); 2) Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A (Count Two); 3) Bank Fraud, in violation of 18 U.S.C. § 1344 (Count Three); 4) Theft of United States Mail, in violation of 18 U.S.C. §1708 (Count Four); and 5) securities violations under 18 U.S.C. § 513(a) (Count Five). The Indictment also contains criminal forfeiture allegations.

On June 4, 2013, Defendant filed the instant Motion to Suppress (Docket Entry No. 25),

challenging a warrantless search of his apartment.

The following background facts are undisputed. On October 11, 2009, Detloff was driving a vehicle in the City of Novi, Michigan. Officers pursued the vehicle upon learning that the vehicle had been reported as stolen. The officers used their lights to make a traffic stop and pulled Detloff over. After exiting the vehicle, Detloff fled on foot and was pursued by officers who tasered Detloff several times. Detloff ultimately reappeared, surrendered, and was arrested.

After his arrest, Detloff gave written consent to search a storage unit that he rented. Officers also searched his apartment in Howell, Michigan without a warrant. The search at the apartment yielded stolen checks, blank checks and card stock, computers, scanners, a printer and multiple identifications. Detloff seeks to suppress that evidence.

Detloff claims that he never gave consent to search his apartment. Detloff claims that, knowing what was in the apartment, he would not consent to the search of the apartment. He contends the Court must hold a hearing to determine if he gave valid consent.

The Government responds that there was a "consensual search of Defendant's residence." (Govt.'s Br. at 3). It asserts that subsequent to the storage unit search, "officers requested, and received verbal consent from the Defendant," to search his residence. (*Id*. at 4). It contends that Defendant later signed a consent form allowing agents to search all the items recovered at his residence. The Government acknowledges it has the burden of showing that Detloff's verbal consent was voluntary, under the "totality of the circumstances." It contends that one of the strongest indicia of the voluntariness of Detloff's verbal consent to search his home is the fact that he later signed a written consent form allowing the officers to search the computers, etc. they recovered at his home.

With the issues so framed by the parties, this Court held an evidentiary hearing on December 18, 2013.[1] The Government called the following individuals as witnesses at the evidentiary hearing: 1) Detective Michael Prough; 2) Matthew Conquest, a former Detective Sergeant with the Novi Police Department who is now retired; 3) Special Agent Alexander Monsma; and 4) Special Agent Carl Clapper. The Defense cross-examined the Government's witnesses and also called Detloff to testify for the limited purpose of the Motion to Suppress Evidence.

Five exhibits (marked Government's Exhibit Number 2 through 6) were admitted at the hearing: 1) a "Search Consent Authorization" form dated September 12, 2009 (Govt.'s Ex. 2); 2) a "Search Consent Authorization" form dated October 13, 2009 (Govt.'s Ex. 3); 3) a "Novi Police Department Property Report" (Govt.'s Ex. 4); 4) a *Miranda* Waiver form (Govt.'s Ex. 5); and 5) an additional waiver form (Govt.'s Ex. 6).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having observed the evidence and the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[2]

---

[1] This Court originally scheduled the evidentiary hearing for an earlier date but a key witness was unavailable due to emergency spinal surgery. The parties agreed to adjourn the evidentiary hearing until that witness was able to testify.

[2] To the extent that a finding of fact is more properly a conclusion of law, and the to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

**FINDINGS OF FACT**

On October 11, 2009, Detloff was arrested by the Novi Police Department and taken into custody.

At that time, Detective Michael Prough ("Prough") was employed by the Novi Police Department and was assigned to criminal investigations. On October 12, 2009, Detective Prough was assigned to investigate potential check fraud by Detloff.

After reviewing a summary of the events surrounding Detloff's arrest, Detective Prough attempted to interview Detloff in a holding cell at the Novi Police Department on the morning of October 12, 2009. Detective Prough began by introducing himself and advising Detloff of his *Miranda* rights. After Detective Prough verbally advised Detloff of his *Miranda* rights, Detloff read and signed a written waiver of those rights. (*See* Govt.'s Ex. 5).

After agreeing to speak with Detective Prough, Detloff advised that he had recently moved to Michigan and that he had a storage unit in Howell, Michigan. When Detective Prough asked Detloff for consent to search that storage unit, Detloff gave consent to search the storage unit and signed a written form authorizing a search of the storage unit at 2440 W. Grand River in Howell, Michigan.

Detective Prough, accompanied by another officer, then drove to the storage unit in Howell and searched the unit. They found nothing in the storage unit in Howell.

Detective Prough then contacted his supervisor at that time, Detective Sergeant Matthew Conquest ("Conquest"), and advised that nothing was found. Prough and Conquest discussed that the next step in the investigation would be to try to search Detloff's apartment for evidence relating to check fraud. The two officers discussed that they would need to obtain Detloff's

4

consent to do so. Rather than have Prough drive back to the Novi Police Department from Howell, Conquest chose to ask Detloff for consent to search Detloff's apartment. Conquest then walked down to speak with Detloff, who was in a holding cell.

When Conquest entered the holding cell, he was alone and was not carrying a weapon. Detloff stood up and spoke with him. Conquest told Detloff that officers had searched his storage unit in Howell and found nothing. Conquest then asked Detloff for consent to search Detloff's apartment. Conquest testified that while he does not remember the exact words that Detloff used to respond, Detloff responded in the affirmative and he believes that Detloff said either, "Yes" or "ok." Detloff was alert and attentive during this brief conversation and Conquest testified that Detloff appeared to understand what was being asked of him. This Court fully credits Conquest's testimony.

After obtaining Detloff's verbal consent to search his apartment, Conquest advised Prough that consent had been obtained.

Prough and another officer searched Detloff's apartment on October, 12, 2009, after Conquest obtained verbal consent from Detloff. They seized a number of items from Detloff's apartment including: boxes of check stock, a scanner, a laptop computer, a printer, and a hard drive. (*See* Govt.'s Ex. 4).

Meanwhile, law enforcement officers from the United States Postal Inspection Service and the Secret Service were also assigned to investigate the case. At that time, Special Agent Alexander Monsma ("Monsma") was assigned to the Detroit Field Office of the Secret Service and Carl Clapper ("Clapper") was assigned to the Postal Inspection Service. Both Monsma and Clapper spoke with Prough about the investigation.

Monsma, accompanied by Prough, sought to interview Detloff on the morning of October 13, 2009. Before speaking with Detloff, Monsma had Detloff sign another written waiver of his *Miranda* rights. (Govt.'s Ex. 6). Detloff provided little information during this interview, which concluded after about a half hour.

Before attempting to search the contents of the electronic devices seized from Detloff's apartment on October 12, 2009, on the afternoon of October 13, 2009, Detective Prough asked Detloff to consent to a search of the contents of the items seized. Detective Prough, this time accompanied by Clapper, asked to speak with Detloff again. Detloff agreed to speak with them, and provided an additional signature on the *Miranda* waiver he had previously signed. (Govt.'s Ex. 5). That interview lasted approximately 30 minutes. During that interview, Prough asked Detloff for consent to search the electronic devices that had been seized from Detloff's apartment. Detloff gave his consent to the requested search of those devices, and signed a written search consent authorization. (*See* Govt.'s Ex. 3).

## ANALYSIS & CONCLUSIONS OF LAW

"While the Fourth Amendment protects citizens against unreasonable searches and seizures, a search of a person is not unreasonable if that person gives free and voluntary consent." *United States v. Beauchamp*, 659 F.3d 560, 571-72 (6th Cir. 2011) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

It is the government's burden, by a preponderance of the evidence, to show through "clear and positive testimony" that the consent to search was given voluntarily. *United States v. Worley,* 193 F.3d 380, 385 (6th Cir. 1999).

Consent is voluntary when it is "unequivocal, specific and intelligently given,

uncontaminated by any duress or coercion." *United States v. Moon,* 513 F.3d 527, 537 (6th Cir.2008) (internal citations omitted).

Voluntariness is determined by examining the totality of the circumstances. *See Bustamonte,* 412 U.S. at 227, 93 S.Ct. 2041; *United States v. McCaleb,* 552 F.2d 717, 720 (6th Cir.1977). "Several factors should be examined in the consent calculus. First, a court should examine the characteristics of the accused, including the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; and whether the individual understands his or her constitutional rights. *See United States v. Jones,* 846 F.2d 358, 360 (6th Cir.1988)." *Beauchamp*, 659 F.3d at 572. "Second, a court should consider the details of the detention, including the length and nature of detention, *id.* at 226, 93 S.Ct. 2041; the use of coercive or punishing conduct by the police, *id.* at 226, 93 S.Ct. 2041; and indications of "more subtle forms of coercion that might flaw [an individual's] judgment." *Beauchamp*, 659 F.3d at 572.

In addition, [w]hile the police do not have to inform an individual of his right to refuse" consent to search, "the absence of such a warning" should be "considered in the totality of the circumstances analysis." *Id*. at 572.

As explained below, the Court concludes that the government has met its burden of proving, by a preponderance of the evidence, that Detloff voluntarily consented to the search of his apartment.

Here, the characteristics of Detloff weigh in favor of the conclusion that the consent to search his apartment was voluntary. Detloff is a mature adult who has had prior contact with the legal system. Detloff testified that he has been arrested before and has prior experience with

consent-to-search forms. Detloff's age, intelligence, and experience indicate the ability to freely consent to a search.

And while there is no evidence that Detective Conquest expressly advised Detloff of his right to refuse to give consent to search his apartment during their brief conversation, that does not change this Court's determination. Again, prior to being arrested in connection with this case, Detloff had prior experience with consent-to-search forms. Indeed, Detloff testified that he has, during previous encounters with law enforcement officers, refused to give consent to search. Moreover, shortly before Detloff gave Detective Conquest consent to search his apartment, Detloff had read and signed consent to search forms that expressly advised him that he has the right to refuse to consent to a search. The Court finds that Detloff understood that he has the right to refuse consent and that the absence of an additional warning by Detective Conquest, under the circumstances presented here, does not render Detloff's consent involuntary.

The details of the detention also weigh in favor of finding that consent was voluntary. First, the length and nature of the interviews with Detloff support a finding of voluntary consent. Although Detloff was interviewed three times over the course of two days, none of the interviews lasted for more than a half hour. Moreover, there is no credible evidence of any coercion, duress, or punishing conduct on the part of any of the officers. None of the officers who Detloff dealt with made any threats or promises of leniency to Detloff, at any time.

## CONCLUSION & ORDER

As explained above, the Court finds that the government has met its burden of proving, by a preponderance of the evidence, that Detloff voluntarily consented to the search of his apartment.

Accordingly, IT IS ORDERED that Detloff's Motion to Suppress (Docket Entry No. 25) is DENIED.

IT IS SO ORDERED.

                                                    S/Sean F. Cox  
                                                    Sean F. Cox  
                                                    United States District Judge

Dated: December 30, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 30, 2013, by electronic and/or ordinary mail.

                                                    S/Jennifer McCoy  
                                                    Case Manager